No. 14-1660

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

Equal Employment Opportunity Commission,

     Plaintiff-Appellee,

v.

Northern Star Hospitality, Inc. d/b/a Sparx Restaurant; Northern Star Properties, LLC; North Broadway Holdings, Inc.,

     Defendants-Appellants.

---

On Appeal from the United States District Court
for the Western District of Wisconsin
Case No. 3:12-cv-0214-bbc
The Honorable Barbara C. Crabb

---

BRIEF OF THE PLAINTIFF-APPELLEE
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

---

P. DAVID LOPEZ
General Counsel

CAROLYN L. WHEELER
Acting Associate General Counsel

LORRAINE C. DAVIS
Assistant General Counsel

JULIE L. GANTZ
Attorney

EQUAL EMPLOYMENT
  OPPORTUNITY COMMISSION
Office of General Counsel
131 M Street, NE
Washington, DC 20507
(202) 663-4718
julie.gantz@eeoc.gov

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................ii

TABLE OF AUTHORITIES ........................................................................iii

JURISDICTIONAL STATEMENT .............................................................. 1

STATEMENT OF THE ISSUES.................................................................. 1

STATEMENT OF THE CASE...................................................................... 1

   I. Course of Proceedings ...................................................................... 1

   II. Statement of Facts ......................................................................... 3

   III. District Court Decision................................................................ 11

SUMMARY OF ARGUMENT .................................................................. 14

ARGUMENT ............................................................................................ 15

I.   The District Court Correctly Determined that Holdings and Properties
     are Liable for the Damages Awarded Against Hospitality. ................................. 15

     A.  Holdings is liable for the relief the Commission obtained for Miller as a
        successor to Hospitality............................................................................ 16

     B.  The district court properly pierced the corporate veil and held that
        Properties and Holdings are liable for the damages awarded for the
        retaliation claim because Brekken alone controlled the three
        companies and ignored corporate formalities. ........................................... 20

II.  The District Court Acted Within its Discretion in Awarding an Additional 15%
     of the Back Pay Award to Offset the Tax Consequences.................................... 29

CONCLUSION.......................................................................................... 31

CERTIFICATE OF COMPLIANCE WITH F.R.A.P. 32(a)(7)................................... 33

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alam v. Miller Brewing Co.*, 709 F.3d 662 (7th Cir. 2013)..........................................20

*Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975)) .....................................15, 29, 31

*Armbruster v. Quinn*, 711 F.2d 1333 (6th Cir. 1983) ................................................26

*Bruso v. United Air Lines*, 239 F.3d 848 (7th Cir. 2004)...........................................15

*Brown v. Daikin America*, No. 12-2955, 2014 WL 2895974
   (2d Cir. June 27, 2014) ............................................................................29

*EEOC v. G-K-G, Inc.*, 39 F.3d 740 (7th Cir. 1994)....................................................19

*EEOC v. Joe's Stone Crab, Inc.*, 15 F. Supp. 2d 1364 (S.D. Fla. 1998) ....................30

*EEOC v. Thomas Dodge Corp. of N.Y.*, 524 F. Supp. 2d 227 (E.D.N.Y. 2007) ....28, 29

*EEOC v. Vucitech*, 842 F.2d 936 (7th Cir. 1988) ................................................17, 18

*Eshelman v. Agere System*, 554 F.3d 426 (3d Cir. 2009)......................................29, 30

*Franks v. Bowman Trans. Co.*, 424 U.S. 747 (1976) ................................................29

*Herman v. Blockbuster Entertainment Group*, 18 F. Supp. 2d 304 (S.D.N.Y.
   1998), *aff'd*, 182 F.3d 899 (2d Cir. 1999) ................................................26

*Jones v. Union Pac. R. Co.*, 302 F.3d 735 (7th Cir. 2002) ........................................16

*Lippert Tile Co. v. Int'l Union of Bricklayers*, 724 F.3d 939 (7th Cir. 2013) ......24, 26

*McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930 (11th Cir. 1987)
   (*see* Defs. Br. at 16).............................................................................26

*Moriarty v. Svec*, 164 F.3d 323 (7th Cir. 1998)........................................................27

*Murray v. Miner*, 74 F.3d 402 (2d Cir. 1996)................................................26, 27, 28

*Musikiwamba v. ESSI, Inc.*, 760 F.2d 740 (7th Cir. 1985) ........................................17

*National Soffit & Escutcheons, Inc. v. Superior System, Inc.*, 98 F.3d 262 (7th Cir. 1996) ........................................................................................ 21

*O'Neill v. Sears, Roebuck & Co.*, 108 F. Supp. 2d 443 (E.D. Pa. 2000) .................... 30

*Papa v. Katy Industrial, Inc.*, 166 F.3d 937 (7th Cir.1999)............... 21, 25, 26, 27, 28

*Prince v. Kids Ark Learning Ctr. LLC*, 622 F.3d 992 (8th Cir. 2010)........................ 15

*Sears v. Atchison, Topeka & Santa Fe Railway Co.*, 749 F.2d 1451 (10th Cir. 1984)........................................................................................ 29, 31

*Sere v. Bd. of Trs. of Univ. of Ill.*, 852 F.2d 285 (7th Cir. 1988) ................................ 16

*Shore v. Federal Express Corp.*, 43 F.3d 373 (6th Cir. 1994) .................................... 15

*Teed v. Thomas & Betts Power Solutions*, 711 F.3d 763 (7th Cir. 2013)............. 18, 19

*Trustees of Pension, Welfare & Vacation Fringe Benefits Funds of IBEW*, 995 F.2d 785 (7th Cir. 1993) ........................................................ 25, 26, 28

*Wheeler v. Snyder Buick, Inc.*, 794 F.2d 1228 (7th Cir. 1986) ....................... 17, 18, 19

*Worth v. Tyler*, 276 F.3d 249 (7th Cir.2001) .................................................. 20, 21, 26

## STATE CASES

*Olen v. Phleps*, 200 Wis. 2d 155 (Wis. Ct. App. 1996) ................................................ 22

## FEDERAL STATUTES AND RULES

42 U.S.C. § 2000e(b)..................................................................................................... 11

42 U.S.C. §§ 2000e et seq.............................................................................................. 1

28 U.S.C. § 1291............................................................................................................ 1

28 U.S.C. § 1331............................................................................................................ 1

Fed. R. App. P. 32(a)(5)................................................................................................ 33

Fed. R. App. P. 32(a)(6)................................................................................................ 33

Fed. R. App. P. 32(a)(7)(B)......................................................................... 33

Fed. R. App. P. 32(a)(7)(B)(iii).................................................................. 33

## OTHER AUTHORITIES

Wilson McLeod, *Shareholders' Liability and Workers' Rights: Piercing the Corporate Veil Under Federal Labor Law*, 9 *Hofstra* Lab. L.J. 115, 143 (1991) ................................................................................................... 24

## STATEMENT OF JURISDICTION

This is an enforcement action brought by the EEOC pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. The district court had jurisdiction under 28 U.S.C. § 1331 (federal question) and § 1345 (U.S. as plaintiff). The district court entered final judgment on February 25, 2014. App.52. The Defendants filed a timely notice of appeal on March 27, 2014. App.1. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Whether the district court correctly found that Northern Star Properties and North Broadway Holdings are liable for the damages and injunctive relief awarded to the Commission.

2. Whether the district court acted within its broad discretion to award make-whole relief when it awarded an additional 15% of Miller's back pay award to offset the tax consequence of the award.

## STATEMENT OF THE CASE

### I. Course of Proceedings

In this Title VII racial harassment and retaliation action, the Commission won a jury trial on the retaliation claim and obtained significant monetary and injunctive relief on the retaliation claim. The defendants have appealed that judgment, as well as the district court's ruling that all three defendants were liable for the relief obtained by the Commission.

On March 27, 2012, the EEOC filed a complaint against Northern Star Hospitality, Inc. d/b/a Sparx Restaurant ("Hospitality") in federal district court, alleging that Hospitality violated Title VII by subjecting Dion Miller to racial harassment and terminating him in retaliation for opposing the harassment. App.55 (Complaint ¶ 7). The Commission alleged that less than three weeks after Miller complained about the posting of a defaced dollar bill on the restaurant's cooler picturing a noose, swastika, and hooded Ku Klux Klan figure, he was terminated for having a poor attitude, despite the absence of any prior disciplinary action. App.55-56 (Complaint ¶¶ 8-10). The Commission filed an Amended Complaint on September 7, 2012, adding Northern Star Properties, LLC ("Properties") and North Broadway Holdings, Inc. ("Holdings") as defendants. App.62-68 (First Amended Complaint).

Hospitality moved for summary judgment on all claims brought by the EEOC. App.91. The district court granted summary judgment on the EEOC's harassment claim, reasoning that the single incident of racial harassment was insufficiently severe or pervasive to violate Title VII. App.5. Following a bench trial on August 12, 2013, to determine whether Properties and Holdings were potentially liable for the retaliation the Commission alleged occurred at Hospitality/Sparx, the court issued an order August 20, 2013, holding that the corporate veil should be pierced and that the three defendants were all liable for the remaining retaliation claim. App.20. The court also ruled that Holdings was a successor to Hospitality, and liable under that theory as well. App.20-21.

A trial on the retaliation claim was held in September 2013. The jury found the defendants liable for retaliating against Miller and awarded $15,000 in compensatory damages. App.93-95 (Special Verdict forms). Although the jury found that the defendants acted with reckless disregard for Miller's federally protected rights, it awarded no punitive damages. App.95-96. On January 27, 2014, the district court granted the Commission's motion for back pay and injunctive relief, and denied a request for front pay. App.46. The court awarded $43,300.50 in back pay and interest. App.49. The court awarded Miller an additional $6,495, 15% of the back pay award, *id.*, to "reimburse him for the extra taxes he will owe on the lump sum payment he is to receive, to be determined by the court once the interest calculation has been approved." App.47. The court enjoined the defendants from discharging employees in retaliation for complaints about racially offensive postings and required anti-discrimination policies and training of managers. App.45-46.

## II. Statement of Facts[1]

Dion Miller, who is black, worked at Sparx as a cook beginning in 2009, and later as an assistant kitchen manager. App.6. Miller earned $14 per hour and worked 32 hours a week. *Id.*; S.App.275. Miller was one of two black employees at Sparx. *Id.* On October 1, 2010, he arrived at work for his morning shift and was told by a coworker to go look at the kitchen cooler. *Id.* A one-dollar bill defaced with racist drawings was displayed over an employee notice. *Id.* Someone had drawn a noose around George Washington's neck, a swastika on his forehead, and darkened

---

[1] The facts regarding Miller's experience are undisputed and not at issue on appeal as the appellants take no appeal from the finding of unlawful retaliatory discharge.

an area on his cheek. *Id.* Next to Washington's portrait on the bill was a "hooded Klansman" on horseback with "KKK" written on the hood. *Id.* Under the defaced dollar was a picture of African American former child actor Gary Coleman. *Id.*

When the manager, Kim Deasy, arrived at the restaurant, Miller told her to look at the items on the cooler. App.7. Deasy said kitchen manager Evan Openshaw and "those guys" were the last to leave the prior evening. *Id.* Openshaw admitted that he put up the Coleman picture and that kitchen supervisor Chris Jarmuzek attached the defaced dollar. *Id.* Miller told Openshaw it was offensive and asked him to remove it. *Id.* Although Sparx's general manager testified that posting the dollar with racist images was a firing offense under the company's policies, Jarmuzek was given a warning. *Id.* He retained his supervisor position and lost no shift time. App.8-9. Openshaw was not disciplined and no investigation was conducted. App.9.

In the days immediately following Miller's complaint, Openshaw and Jarmuzek criticized Miller's work performance several times and met with each other to discuss his work and attitude. App.9. Three weeks after the dollar-bill incident, on October 23, 2010, Miller was fired, ostensibly for attitude problems. App.9-10. Although the company had a progressive discipline policy, Miller received no complaints or counseling about his performance or attitude prior to his termination. App.11.

Miller was unable to find another job in the restaurant industry. App.12. He testified that he was unable to find work of any kind until May 2012. S.App.278.

4

Miller earned $18,272 in 2010 (EEOC App.284); $11,826 in 2012 (EEOC App.285); and as of August 31, 2013, had earned only $14,851 for that year. (EEOC App.286).

The three corporate defendants in this case were organized under Wisconsin law by Christopher Brekken, and the management and operations of the three were intertwined. Brekken is the sole owner of Properties, and the sole shareholder, officer, and director of Hospitality and Holdings. S.App.2-3. Properties and Hospitality were formed at approximately the same time in late November and early December 2004. EEOC App.1 (Joint Pretrial Statement at 1, ¶¶ 1-4); S.App.3.

Properties was created to acquire the building at 1827 North Broadway in Menomonie, Wisconsin, that housed the restaurant operated by Hospitality. S.App.3. The restaurant was first a Green Mill restaurant and then became a Sparx in September 2009. *Id.*; EEOC App.40 (T1-46). Holdings was formed to operate a Denny's in the same building after Sparx closed June 3, 2012. EEOC App.2 (Joint Pretrial Statement at ¶¶ 10-14). The Denny's opened for business in mid October. *Id.* at ¶ 14.

The earliest lease between Properties and Hospitality that was produced is dated July 15, 2009, for a six-year term. S.App.66-67. Brekken signed the lease on behalf of both Properties and Hospitality. S.App.80. The lease required Hospitality to pay Properties' mortgage, real estate taxes, insurance, and operating expenses. S.App.67-69.

Properties had a checking account through Anchor Bank from which payroll checks for Green Mill, the first restaurant operated by Hospitality, were issued.

EEOC App.20-22 (T1-24-26); EEOC App.138-40. Brekken signed the payroll checks. EEOC App.23 (T1-27). Properties had this account as late as November 2009. EEOC App.24; EEOC App.145-146. Hospitality did not obtain a bank account until September 15, 2009. EEOC App.29; EEOC App.147.

ADP, the company handling payroll for Hospitality's employees, identified Properties, not Hospitality, as the client on payroll records in May 2006. EEOC App.24-25 (T1-28-29); EEOC App.164-65. It is unclear when Hospitality was substituted for Properties as the client, but one ADP-generated document lists Hospitality in an April 5, 2010 payroll document. EEOC App.183. ADP charged Hospitality's account for payroll services until at least September 6, 2012, three months after it had been dissolved. EEOC App.6 (Joint Pretrial Statement at ¶ 47); EEOC App.26-27 (T1-30-31).

The employee work rules at Hospitality were promulgated for Green Mill employees, and the same rules were used when it became a Sparx. EEOC App.39 (T1-45); EEOC App.202. The Sparx House Rules stated that the employee signing the document is "agreeing to abide by all the rules and regulations of Northern Star Properties, LLC." EEOC App.42 (T1-48); EEOC App.202, 204, 206, 208.

Because Sparx was not profitable, Brekken contacted the Denny's Corporation about opening a Denny's franchise to replace Sparx. On April 13, 2011, Brekken received an email from a Denny's representative, (EEOC App.244), and on May 2, 2011, Brekken submitted a franchise application. EEOC. App.245-59. Brekken was

informed in January 2012 that he was prequalified to open a Denny's. EEOC

App.58 (T1-68); EEOC App.266-68.

The Commission filed suit, seeking relief for Dion Miller, on March 27, 2012.

App.54. Brekken testified that he was aware of the EEOC's lawsuit before he

entered into the franchise agreement with Denny's. EEOC App.58. *See also* EEOC

App.8 (Joint Pretrial Statement at ¶ 68 ("Mr. Brekken was aware of the EEOC's

Complaint in this matter and acknowledges service on May 31, 2012, after the filing

on March 27, 2012.").

Brekken incorporated Holdings on May 7, 2012, to operate the Denny's. EEOC

App.2 (Joint Pretrial Statement at ¶11). The franchise agreement with Denny's was

entered into on June 25, 2012. S.App.8; S.App.167. Brekken signed for Holdings and

Lisa Donnebauer, a Sparx manager, signed the agreement as the "Designated

Operator." S.App.196.

Sparx closed its doors to customers on June 3, 2012, and Hospitality terminated

its lease with Properties. EEOC App.62-64 (T1-74-76); EEOC App.129. Holdings

entered into an identical lease with Properties on June 4, 2012. EEOC App.3 (Joint

Pretrial Statement at ¶ 21; EEOC App.184; EEOC App.64-66 (T1-76-78). Holdings

began paying its lease obligations in early October, EEOC App.97 (T1-130), and

Denny's opened for business soon after. EEOC App.2 (Joint Trial Statement at ¶14).

Brekken testified that up until then, Hospitality "had the liability of maintaining

the facility until they got their stuff out of the way." EEOC App.67 (T1-79). No

7

documentation in the record identifies when Hospitality's responsibilities under the lease with Properties ended.

At the beginning of 2012, Properties owed Hospitality $329,325. EEOC App.34-35 & 90-91 (T1-40-41& 111-112); EEOC App.231 (Hospitality tax return noting $329,325 due from "affiliated company"). Brekken testified that the debt owed by Properties to Hospitality was "forgiven when we switched to a Denny's." EEOC App.88 (T1-104). Brekken testified that if the debt had not been forgiven, it would have come out of his pocket. EEOC App.102 (T2-42). He stated that because Hospitality owed him $900,000, "you wash out the $300,000 credit against the $900,000 debit." EEOC App.35 (T1-41). No loan document reflected the $329,325 that Properties owed to Hospitality, and no interest accrued on the debt. EEOC App.92-94, 34, 36-37 (T1-113-115; T1-40, 42-43). When the district court asked Brekken why Properties owed money to Hospitality, he testified, "I can't honestly answer that." EEOC App.35-36 (T1-41-42).

Brekken's accountant confirmed that the $329,325 debt "was basically assumed by [Brekken], as the owner of multiple entities" as he "had some transactions that he put money into entities and some entities were owed money from each other, and in the liquidation, that was one of the assets that basically was distributed to [Brekken] to pay off approximately 700 some thousand that was owed to him." EEOC App.92 (T1-113). According to the accountant, this sum reflected "some real estate taxes that were written out of Hospitality['s account], but they were assigned back to Properties for tax purposes and reflected as an expense on Properties' tax

return.  And then there was a large amount that went back to the original formation. That was 200 some thousand dollars and I do not know what that was for." EEOC App.93 (T1-114).

Although no assets were transferred from Hospitality to Holdings, following its dissolution, Hospitality continued to make payments that benefitted Holdings and/or Properties. Hospitality made payments to the Regional Business Fund to close out the debt Properties owed on the mortgage weeks after Holdings had opened for business as a Denny's and months after it had dissolved. EEOC App.4 (Joint Pretrial Statement at ¶¶ 32-39); EEOC App.30-33; 69-70 (T1-34-37; 85-86); EEOC App.150, 159. Hospitality continued to pay the monthly mortgage payments of over $11,000 for Properties through August 31, 2012. EEOC App.4-5 (Joint Pretrial Statement at ¶¶ 26-31); EEOC App.68-69 (T1-84-85). Brekken admitted at trial that Hospitality's obligation under its lease with Properties was to continue to pay the mortgage on the lease to which it was no longer a party. EEOC App.68-69 (T1-84-85). Additionally, Hospitality paid for the property insurance policy to insure Denny's/Holdings for the year July 7, 2012 to July 7, 2013, when Holdings became the insured. EEOC App.76-79 (T1-92-95); EEOC App.273.

Hospitality continued to pay monthly fees of nearly $4,000 from June to September 2012 to payroll company ADP to pay several former Hospitality employees who went to work at the Denny's. EEOC App.70-74 (T1-86-90). Hospitality paid for Holdings' liquor license after Brekken requested that Hospitality's liquor license be transferred to Holdings. EEOC App.79-80 (T1-95-96);

EEOC App.273 (Sparx general ledger entry of $652.42 to City of Menomonie). On August 1, 2012, Hospitality issued a check for $10,339.65 to the Dunn County Treasurer for property taxes. EEOC App.273; EEOC App.82-83 (T1-98-99).

Following its dissolution, Hospitality paid for the build-out to turn Sparx into a Denny's. EEOC App.6 (Joint Pretrial Statement at ¶ 54); EEOC App.84 (T1-100); EEOC App.271 (August 10, 2012 $7,945 payment to Hofer Painting designated as "Denny's build"). Hospitality paid for electrical work performed in July and August. EEOC App.84-85 (T1-100-101); EEOC App.273 ($2,795.15 and $1,032.01 to Excel Energy). Brekken testified that Hospitality was "liable until Denny's was able to take possession of the facility and appropriately start running a Denny's restaurant." EEOC App.85 (T1-101).

In discussions with Denny's, Brekken stated that he would use his "existing pool of managers." EEOC App.264 Exh. 27 (New Franchisee Approval Executive Summary); EEOC App.50 (T1-60). When Sparx closed, general manager Lisa Donnerbauer, manager Dave Faulhauber, and manager Mitch Ackerman became managers at the Denny's. EEOC App.50-51 (T1-60-61). Additionally, Sparx employee Alex Rivet became a manager at Denny's. EEOC App.51-52. Sparx employees hired to be managers at Denny's attended Denny's training sessions in the summer of 2012 paid for by the now-dissolved Hospitality. EEOC App.60-61 (T1-70-71). Brekken testified that he determined that Donnerbauer, Ackerman, and Faulhauber would "get educated" and that Hospitality would pay for it. EEOC App.101 (T2-35). Brekken stated that, "I felt it was Hospitality's responsibility to

train those employees." EEOC App.74 (T1-90). "It was like a severance deal; train them to work somewhere else because it is completely different than Sparx." EEOC App.74-75 (T1-90-91). Brekken conceded that their training would benefit Holdings. EEOC App.101 (T2-35). Additionally, after Sparx/Hospitality closed and before Holdings/Denny's opened, Donnerbauer was paid $900 by Hospitality as an "early draw" on payroll. EEOC App.75-76 (T1-91-92); EEOC App.273.

Denny's Employee House Rules were virtually identical to those used at Sparx. *See* EEOC App.210-11; EEOC App.42-43 (T1-48-49). Nineteen of the forty employees from Sparx/Hospitality worked at the Denny's that replaced it. EEOC App.7 (Joint Pretrial Statement at ¶ 61); EEOC App.263 (Denny's New Franchisee Approval Executive Summary listing 40 employees at Sparx); EEOC App.49 (T1-59). Holdings opened a checking account in September 2012. EEOC App.7 (Joint Pretrial Statement at ¶ 57; EEOC App.87 (T1-103). Holdings opened to the public as Denny's on October 14, 2012. EEOC App.2 (Joint Trial Statement at ¶14).

Brekken testified at trial that Hospitality has no assets. EEOC App.87-88 (T1-103-04). Brekken's accountant testified that Hospitality could not pay any kind of judgment as of December 2011 because of the debts owed to Brekken. S.App.14. The Commission filed its Amended Complaint on September 2012 adding Properties and Holdings as defendants. App.62-68.

### III. District Court Decision

The district court ruled on August 20, 2013 that all three corporate defendants are potentially liable for relief awarded for the retaliation claim. A jury awarded

Miller $15,000 in compensatory damages in September of 2013, and the district court awarded back pay and injunctive relief in January 2014. On February 19, 2014, the district court awarded Miller $43,300.50 in back pay and interest, as well as an additional $6,495 to offset the taxes owed for the lump sum of his recovery. App.49.

In its August 20, 2012, Opinion and Order, the court held that "the numerous instances in which corporate formalities were overlooked supports a conclusion that the 'corporate veil' has been pierced and that Properties and Holdings can be held equally responsible for any liability that a jury might assess against Hospitality." App.32. Consequently, the court ruled, "all will be liable for any judgment awarded against Hospitality for its alleged retaliation against Dion Miller." App.33. The court also held that Holdings is a successor to Hospitality that can be held liable for the allegedly retaliatory actions of Hospitality. *Id.* [2]

The court held that the three defendants did not observe corporate formalities sufficiently to protect any one of them from liability for the act of the others. App.31. The court emphasized that all three "were controlled entirely and solely by Chris Brekken, who rarely observed corporate formalities when transferring debts or assets from any one corporation to another or attributing responsibilities to any particular corporation." *Id.* The court noted that Brekken listed Properties as the corporate entity for the Green Mill restaurant on a checking account used for payroll and other expenses for two years but now says the restaurant was only

---

[2] The district court also held that the defendants were engaged in an industry affecting commerce under 42 U.S.C. § 2000e(b) given that "the interstate effect is evident." App.27. The defendants do not challenge this ruling on appeal.

Hospitality's responsibility. *Id.* The court pointed out that Hospitality was owed $305,395 by Properties in 2011, but there is no evidence that Properties paid interest on the debt total or paid off the debt. *Id.* Instead, "[t]hey were simply credited to Hospitality as part of an adjustment of journal entries and set off against loans and notes payable to Geometrix, Chris Brekken and Eric Sampson (whose role in this case has not been disclosed by the parties)." *Id.*

The court also stressed that after Hospitality was formally dissolved in early June 2012, "it continued to act as an ongoing entity, undertaking work to make the restaurant building ready for its new life as a Denny's Restaurant, incurring costs for that work, and continuing to make mortgage payments to Properties and pay for insurance." App.31-32. Hospitality paid to transfer the liquor license from Sparx to the new Denny's, paid for the training by Denny's to the management at the new restaurant.

The court held, in the alternative, that there were sufficient facts establishing that Holdings has successor liability for any award Hospitality may incur for unlawful retaliation. App.32. The court stated that Holdings moved into a building prepared for it by Hospitality, hired over half of Hospitality's employees, hired Hospitality's managers who had been trained by Denny's at Hospitality's expense, and used the same employee work rules Hospitality used while operating as Sparx. App.32. "In other words, Holdings carried on the restaurant business at 1827 North Broadway, albeit with a different name and theme." *Id.* Because Brekken knew of Hospitality's potential liability for the retaliation against Miller and that

13

Hospitality could not pay a judgment, and was the sole owner and officer of
Holdings, Holdings knew of the potential liability. *Id.* (*citing EEOC v. Vucitech*, 842
F.2d 936, 945 (7th Cir. 1988) (holding that successor liability is presumed where the
successor company knows the fact and extent of its predecessor's liability, and that
it cannot pay a judgment obtained against it)).

## SUMMARY OF ARGUMENT

This Court should affirm the district court's rulings that Properties and
Holdings may be held liable for Hospitality's retaliatory discharge of Dion Miller in
violation of Title VII. The defendants do not challenge on appeal the district court's
ruling that Holdings is responsible under a theory of successor liability.
Accordingly, the district court's ruling should be affirmed on the basis of this waiver
alone. In any case, the district court correctly applied the factors to determine
successor liability to find liability under this theory in this case. Successor liability
applies where the successor had prior notice of the claim against the predecessor,
where the predecessor is unable to provide the relief sought, and where there has
been a sufficient continuity in the business operations of the predecessor and
successor.  All three factors are met in this case.

In addition, the district court's determination that the corporate veils of both
Properties and Holdings should be pierced and both companies' corporate form
disregarded is properly based in law and fact and should be affirmed. To pierce the
corporate veil of an affiliate corporation, there must be unity of interest and
ownership such that separate personalities no longer exist and treating them as

separate corporate entities would sanction a fraud or promote injustice. The record evidence, much of which is undisputed, overwhelmingly satisfies this standard.

Finally, given a district court's wide latitude in fashioning equitable remedies, the 15% addition to the back pay the district court awarded to compensate for the tax burden on Miller fell within the court's discretion and should not be invalidated by this Court. The court heard Miller's testimony regarding his earnings and saw his W-2 forms. Miller's back pay award was significantly more than he earned in a year and the considerable tax consequences of receiving a lump sum were obvious given his earning history. The 15% rate was the lowest potential multiplier for the award. No additional evidence, and certainly not expert evidence, of a particular tax bracket on Miller's income from the back pay award was necessary.

## ARGUMENT

### I. The District Court Correctly Determined that Holdings and Properties are Liable for the Damages Awarded Against Hospitality.

This Court reviews equitable doctrines such as piercing the corporate veil and successor liability for abuse of discretion. *Bruso v. United Air Lines*, 239 F.3d 848, 861 (7th Cir. 2004) ("We review a court's decision with respect to equitable relief for an abuse of discretion."); *Shore v. Fed. Express Corp.*, 43 F.3d 373, 377-78 (6th Cir. 1994) (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 424 (1975)) ("[A]n appellate court reviews a lower court's imposition of equitable remedies in a Title VII case for abuse of discretion."). *See also Prince v. Kids Ark Learning Ctr. LLC*, 622 F.3d 992, 994-95 (8th Cir. 2010) (judicial findings on successor liability are reviewable for abuse of discretion).

**A. Holdings is liable for the relief the Commission obtained for Miller as a successor to Hospitality.**

This Court should affirm the district court's ruling that Holdings can be held liable for Hospitality's violations of Title VII and the damages and injunctive relief awarded as Hospitality's successor. The defendants make no argument on appeal that the district court's finding of successor liability was erroneous. Indeed, the defendants apparently misread the district court's analysis and holding as a "passing reference." *See* Defs. Br. at 12 n.1 (stating that the district court "makes a passing reference to successor liability as it relates to Holdings"). But contrary to the defendants' misunderstanding, the district court squarely held that Holdings was liable as a successor to Hospitality. App.32-33. The failure to challenge this ruling in the opening brief means that the argument is waived. *See, e.g.*, *Jones v. Union Pac. R. Co.*, 302 F.3d 735, 741 (7th Cir. 2002) ("By neglecting to raise the discriminatory job assignments and retaliation claims in his opening brief, and by failing to argue that the district court's actual holding regarding the discriminatory job assignments claim was in error, Jones waived review of these two issues."); *Sere v. Bd. of Trs. of Univ. of Ill.*, 852 F.2d 285, 287-88 (7th Cir. 1988) ("We consistently and evenhandedly have applied the waiver doctrine when appellants have failed to raise an issue in their opening brief.").

In any case, the district court's holding that Holdings is liable as a successor to Hospitality was clearly correct. The doctrine of successor liability plays an important and well-established role in the employment discrimination context. "The successor doctrine was designed to grant remedial relief—i.e., back pay,

reinstatement or seniority—to an employee who, solely because of a change in ownership, is unable to obtain similar relief from the predecessor." *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 749 (7th Cir. 1985). *See also Wheeler v. Snyder Buick, Inc.*, 794 F.2d 1228, 1236 (7th Cir. 1986) (the doctrine of successor liability applies in the employment discrimination context because of "the overriding congressional policy against unfair employment practices," "the helplessness of the victim to protect his rights when ownership of the business changes," and "the ability of the successor to provide relief at a minimum cost").

As the district court stated when it cited to *EEOC v. Vucitech*, 842 F.2d 936, 945 (7th Cir. 1988), *see* App.32, this Court has identified several factors to be considered when assessing whether successor liability should apply: (1) whether the successor had notice of the claim against the predecessor prior to the change in ownership; (2) whether the predecessor is able to provide the relief requested; and (3) whether there has been a sufficient continuity in the business operations of the predecessor and successor. *Wheeler*, 794 F.2d at 1236.

The defendants have conceded that Brekken had prior notice of the EEOC's Title VII claims against Hospitality. *See* App.8 at ¶ 68 ("Mr. Brekken was aware of the EEOC's Complaint in this matter, and acknowledges service on May 31, 2012, after the filing on March 27, 2012."); EEOC App.88 (Brekken testified at trial that he knew of the EEOC's lawsuit before he entered into the franchise agreement with Denny's). Because Brekken is the sole owner, director, and shareholder of Holdings, his knowledge is imputed to Holdings. Brekken was aware of the Commission's

17

Title VII suit when he created Holdings and dissolved Hospitality. Thus cases like *Wheeler*, 794 F.2d at 1236-37, where this Court held that successor liability should not apply because the successor had no knowledge of the plaintiff's Title VII claim when it purchased the original employer's assets, are inapposite. "When [as here] the successor company knows about its predecessor's liability, knows the precise extent of that liability, and knows that the predecessor itself would not be able to pay a judgment obtained against it, the presumption should be in favor of successor liability, even if the successor purchased the assets of its predecessor rather than merged the predecessor into it or consolidated with it." *Vucitech*, 842 F.2d at 945.

Second, Brekken/Properties/Holdings used Hospitality's assets to pay for Sparx to become a Denny's and to pay down Properties' mortgage. Consequently, Hospitality does not have any means of satisfying the judgment obtained by the Commission. Brekken testified that Hospitality has no assets.  EEOC App.87-88. The company's accountant testified that Hospitality could not pay any kind of judgment as of December 2011 because of the debts owed to Brekken. S.App.14. This factor weighs in favor of successor liability. *See Teed*, 711 F.3d at766 ("In the absence of successor liability, a violator of [Title VII] could escape liability, or at least make relief much more difficult to obtain, by selling its assets without an assumption of liabilities by the buyer . . . and then dissolving."). And where, as here, the successor is the same owner—not a third party buyer—the case for finding Holdings a successor is all the more compelling because not only is the knowledge factor obviously present but the case could be made that the owner (Brekken)

18

purposefully diverted resources from Hospitality with the intention of rendering it unable to satisfy legal judgments against it. Under these circumstances, successor liability is particularly appropriate because Holdings has the capacity to make Miller "whole" by satisfying the damages awards and implementing the injunctive relief, and Hospitality does not.

Finally, there is clearly sufficient continuity in the business operations of Hospitality and Holdings at the 1827 North Broadway location to justify successor liability. Both companies operated restaurants in the same building. Brekken is the sole shareholder, officer, and director of both corporations. All of the standard indicia of continuity are present, including the fact that Hospitality and Holdings used the same building site; used substantially the same work force and supervisory personnel; used the same employee work rules; entered into the same lease with Properties; maintained the same jobs, in substantially the same working conditions; used the same types of appliances and methods of food production; and offered the same products. *See EEOC v. G-K-G, Inc.*, 39 F.3d 740, 748 (7th Cir. 1994) (where, after the purchase, the buyer retained most of the seller's personnel and did not institute major changes until a year after the acquisition, the court stated, "If this is not a case of substantial continuity, we do not know what is."); *Wheeler*, 794 F.2d at 1236 n.7 (listing the indicia of continuity). Continuity of operations "favors successor liability on the theory that nothing really has changed." *Teed*, 711 F.3d at 766. As the district court noted, "Holdings carried on the restaurant business at 1827 North Broadway, albeit with a different name and theme." App.32.

The rationale behind a federal standard for successor liability in federal labor and employment statutes is that "the imposition of successor liability will often be necessary to achieve the statutory goals because the workers will often be unable to head off a corporate sale by their employer aimed at extinguishing the employer's liability to them." *Teed*, 11 F.3d at 766 (applying successor liability doctrine in an overtime case). All three of the relevant factors compel the application of successor liability to Holdings, and "there is no good reason to reject successor liability in this case—the default rule in suits to enforce federal labor or employment laws." *Id.* at 769. This Court should therefore affirm the district court's holding that Holdings is liable as a successor.

**B. The district court properly pierced the corporate veil and held that Properties and Holdings are liable for the damages awarded for the retaliation claim because Brekken alone controlled the three companies and ignored corporate formalities.**

This court should affirm the district court's piercing of the corporate veil for Properties and Holdings. An entity affiliated with the employer or former employer of a Title VII plaintiff may be named as a Title VII defendant if it has forfeited its limited liability. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 668 (7th Cir. 2013). "The most common way for an affiliated corporation to forfeit its limited liability is through 'piercing the corporate veil,' whereby corporate formalities are ignored and the actions of one company can accrue to another." *Worth v.* Tyler, 276 F.3d 249, 259-60 (7th Cir.2001). "The basic principle of affiliate liability is that an affiliate forfeits its limited liability only if it *acts* to forfeit it—as by failing to comply with statutory conditions of corporate status, or misleading creditors of its affiliate, or

configuring the corporate group to defeat statutory jurisdiction, or commanding the affiliate to violate the right of one of the affiliate's employees." *Papa v. Katy Indus., Inc.,* 166 F.3d 937, 940–41 (7th Cir.1999). *See also Nat'l Soffit & Escutcheons, Inc. v. Superior Sys., Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) ("The doctrine of piercing the corporate veil may be used to hold individual shareholders, officers and related corporations liable for the acts of the corporation," and corporate form will be disregarded where "the corporate form was so ignored, controlled or manipulated that it was merely the instrumentality of another and that the misuse of the corporate form would constitute a fraud or promote injustice.").

A plaintiff attempting to pierce the corporate veil must show that (1) unity of interest and ownership between the corporations such that the separate personalities no longer exist, and (2) circumstances must be such that adherence to the fiction of separate corporate entities would sanction a fraud or promote injustice. *Worth*, 276 F.3d at 260. This Court should affirm the district court's holding that the limited liability corporate form of Properties and Holdings should be disregarded. Brekken was the sole owner and controller of the three defendants. Properties was essentially an asset of Hospitality and Holdings. Brekken created Properties to buy the land and building at 1827 North Broadway in Menomonie, Wisconsin, where the Green Mill, Sparx and Denny's restaurants operated. Although Properties bought the property on December 29, 2004, it was not until

21

July 15, 2009, that Hospitality and Properties entered into a lease agreement.[3] Properties and Holdings entered into an identical lease in June 2014.

Brekken paid little attention to corporate formalities, leaving no meaningful distinction between the corporations. For example, Properties is listed as the corporate entity for Green Mill on a checking account used for payroll/expenses for the restaurant for two years in 2008-09, despite Brekken's testimony that the restaurant was the sole responsibility of Hospitality and Properties was just a landlord. Additionally, payroll services company ADP administered Hospitality's payroll yet identified the client as Properties in 2006, despite Brekken's representation that Properties never had employees. EEOC App.99; App.164-83. And the employee house rules used by Green Mill, and then Sparx, required the restaurant employee to agree "to abide by all the rules and regulations of Northern Star *Properties*, LLC." EEOC App.42; EEOC App.202, 204, 206, 208 (emphasis added). The same rules were used for Holdings/Denny's, with Holdings substituted in for Properties before the space for the employee's signature. EEOC App.209.

The lack of distinction between Properties and Hospitality is also corroborated by the sizeable debt owed to Hospitality by Properties when Hospitality dissolved. This debt, over $300,000 and large enough to satisfy the judgment obtained by the Commission, was never paid, with or without interest, nor was there any note or other loan documents providing a record of what happened to it. This is because if

---

[3] The absence of corporate records, including any lease between 2004 and 2009, and lack of any loan documents or debt notes, is further evidence that the corporate form in this case should be disregarded. *See Olen v. Phleps*, 200 Wis.2d 155, 163 (Wis. Ct. App. 1996) (absence of corporate records is one factor court applies to determine whether the corporate form is a mere sham).

one of Brekken's corporations needed cash, he transferred money from another company or out of his personal funds. The money owed to Hospitality by Properties was "forgiven" because Hospitality owed more to Brekken. EEOC App.88. Instead of enabling Hospitality to pay its creditors, the debt was offset by one of Brekken's other corporations, despite Brekken's awareness of this lawsuit and Hospitality's potential liability.

Hospitality's assets were used to pay for the transformation of Sparx into a Denny's franchise during the summer and fall of 2012, including painting work, electrical work, transfer of a liquor license, property taxes, and Denny's training for former Sparx employees, despite Hospitality's dissolution in early June 2012. Hospitality paid Properties' mortgage and the workers' compensation, liability, and incidental property insurance policy through July 7, 2013, despite its June dissolution and although Holdings had entered into a lease with Properties.

Brekken's depleting of Hospitality's assets should not be rewarded. The same lack of training and supervision that led to the retaliation against Miller is likely to be duplicated at the Denny's if the damages and injunctive relief are not accomplished. As the district court held, because separate corporate personalities did not exist, the corporate veil should be pierced. The district court's determination is fully supported by the law and the evidence in this case and should be upheld by this Court.

The defendants' argument on appeal rests on a theory and body of case law that are not relevant to Title VII cases in this circuit or under the circumstances of this

case. The defendants interpret the district court's holding in its August 20, 2013 opinion—"that all three defendants can be considered a single employer for liability purposes,"(App.21)—as a determination under the "single employer doctrine" in the "integrated enterprise" context.[4] Defs. Br. at 12, 18-20. The single employer, integrated enterprise concept often arises in the Title VII context where one of the defendant employers does not have a sufficient number of employees to be a covered entity under the particular antidiscrimination law in question. The test used to determine integrated enterprise was borrowed from the National Labor Relations Board, which uses the test to determine whether it can decide a particular labor dispute and for other labor issues. *See, e.g.*, *Lippert Tile Co. v. Int'l Union of Bricklayers*, 724 F.3d 939, 946 (7th Cir. 2013) (companies challenged the district court's finding that the dispute was arbitrable because all three companies should be considered a "single employer"); *see also* Wilson McLeod, *Shareholders' Liability and Workers' Rights: Piercing the Corporate Veil Under Federal Labor Law*, 9 Hofstra Lab. L. J. 115, 143 (1991) (stating that the NLRB uses the single employer doctrine to determine liability for unfair labor practices, to determine whether or not union picketing is directed at a neutral "secondary employer," to determine whether a union may seek to represent the employees of two enterprises in a single bargaining unit, and to determine whether an employer employs enough workers to satisfy NLRA jurisdictional limits.)  This Court in *Lippert Tile* analyzed the four

---

[4] Both the Commission's trial attorney and the district court used the term "single employer" in a generic sense to mean piercing the corporate veil so as to treat the three defendants as one entity liable for the retaliation Miller suffered. *See* EEOC App.103; App.20-21.

factors used to hold that the companies involved were a single employer and the dispute was arbitrable: (1) interrelation of operations; (2) common management; (3) centralized control of labor relations; (4) common ownership. 724 F.3d at 946 (citing *Trs. of Pension, Welfare & Vacation Fringe Benefits Funds of IBEW*, 995 F.2d 785, 788 (7th Cir. 1993). The Court noted that no one factor is conclusive and "[u]ltimately, single employer status is characterized by the absence of an arm's length relationship found among unintegrated companies." *Id.* at 947.

In *Papa v. Katy Industries*, this Court stated that, "[t]here is enough uncertainty about" the four-factor test "cited and recited" in the Seventh Circuit and other courts of appeal "to warrant a fresh look," particularly "because of the vagueness of three of the four factors (all but 'common ownership' and it, as we shall see, is useless)." 166 F.3d at 939-40. This Court emphasized that "[t]he place to start in rethinking the proper standard is with the purpose . . . of exempting tiny employers from the antidiscrimination laws," and observed that Congress exempted small employers from certain antidiscrimination laws "to spare very small firms from the potentially crushing expense of mastering the intricacies of the antidiscrimination laws, establishing procedures to assure compliance, and defending against suits when efforts at compliance fail." *Id.* at 940. Based on this policy consideration, this Court articulated three situations where it is appropriate to treat the employer in question that has fewer than 15 or 20 employees, thus falling below the threshold for coverage by the major antidiscrimination laws, and an affiliated company as a single employer: (1) where "the traditional conditions being present for 'piercing the

veil' to allow a creditor . . . of one corporation to sue a parent or other affiliate"; (2) where "an enterprise [splits] itself up into a number of corporations, each with fewer than the statutory minimum number of employees, for the express purpose of avoiding liability under the discrimination laws"; or (3) where "the parent corporation [directed] the discriminatory act, practice, or policy of which the employee of its subsidiary was complaining." *Id.* at 940-41. This Court has made clear that, after *Papa*, "this Circuit no longer applies the 'integrated enterprise' test to Title VII claims." *Worth*, 276 F.3d at 260.

In its brief on appeal, the defendants apply the four-factor test for finding integrated enterprise, citing *Lippert Tile*, *Trustees of Pension, Welfare*, 995 F.2d at 788, and *Murray v. Miner*, 74 F.3d 402, 404-05 (2d Cir. 1996). Defs. Br. at 14-15, 18. But *Lippert Tile* was not a Title VII case and was instead brought under the Labor Management Relations Act. 724 F.3d at 941. *Trustees of Pension* was also a labor case that did not involve any federal antidiscrimination laws. *See* 995 F.2d at 786. *Murray* was a Second Circuit breach of employment contract action predating *Papa*. 74 F.3d at 404. The defendants' reliance on *Armbruster v. Quinn*, 711 F.2d 1333, 1337 (6th Cir. 1983), is also misdirected. *Armbruster* was a sexual harassment and discrimination case out of the Sixth Circuit that applied the integrated enterprise theory to meet the statutory minimum number of employees for coverage under Title VII, but was decided in 1983, sixteen years before this Court decided *Papa*.[5]

---

[5] The Defendants' other cases—*Herman v. Blockbuster Entertainment Group*, 18 F. Supp. 2d 304, 308-09 (S.D.N.Y. 1998), *aff'd*, 182 F.3d 899 (2d Cir. 1999), and *McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930, 933 (11th Cir. 1987) (*see* Defs. Br. at 16), apply the four-part single employer liability test but are outside this circuit, predate *Papa*,

The integrated enterprise factors, such as centralized control of labor relations, are inapplicable in this Title VII action. The Commission did not amend its complaint to add Properties and Holdings as defendants under a joint employer theory or under an integrated enterprise theory (as discussed in *Papa*) where the defendant lacks the requisite number of employees. Instead, the Commission offered evidence, which the district court credited, that the limited liability of Holdings and Properties should be disregarded under a theory of piercing the corporate veil. Both theories are characterized by lack of arm's length transactions and disregard for a company's limited liability structure. *Murray*, 74 F.3d at 404 ("[T]he policy underlying the single employer doctrine is the fairness of imposing liability for labor infractions where two nominally independent entities do not act under an arm's length relationship."). However, integrated enterprise and piercing the corporate veil are not the same thing. "The corporate veil is pierced, when it is pierced, not because the corporate group is integrated, but (in the most common case) because it has neglected forms intended to protect creditors from being confused about whom they can look to for the payment of their claims." *Papa*, 166 F.3d at 943. *See also Moriarty v. Svec*, 164 F.3d 323, 332 n.9 (7th Cir. 1998) (in pension and welfare funds case brought under ERISA, court declined to reach alter

and are factually distinct. *See Herman*, 18 F. Supp. 2d at 309 (in Title VII sexual harassment and retaliation action, operations of major shareholder who provided management services were insufficiently interrelated with plaintiffs' direct employer to be considered plantiffs' employer where the two companies did not share office space, budgets and financial statements, nor advertising and marketing); *McKenzie*, 834 F.2d at 934 (in sex discrimination action, court held there was sufficient evidence to support a finding that both defendant companies where plaintiff worked could be considered a single or joint employer of the plaintiff so as to establish sufficient number of employees for coverage under Title VII).

ego argument "[b]ecause we agree with the district court that the single employer finding disposes of the question of liability for contributions"); *Trs. of Pension, Welfare*, 995 F.2d at 788 (in pension contributions case, court examined two potential sources of liability and held that the district court correctly found the two companies were not a single employer nor was one the alter ego of the other).

Integrated enterprise is not the legal framework governing in this case. Thus the factor the defendants argue is most important—the interrelation of operations between Properties and Hospitality—is not relevant to piercing the corporate veil. Instead, the key issue is the lack of corporate formalities among Hospitality, Properties and Holdings.

The defendants argue repeatedly in their brief that Holdings "was not even in existence at the time of the incident" (Defs. Br. at 12, 16-18, 21), and "there were absolutely no facts during the relevant time period presented at trial to support the District Court's finding that Sparx and Holdings were single employers for liability purposes." Defs. Br. at 18. Again, the defendants rely on Second Circuit authority inconsistent with *Papa* and *Worth,* with different factual scenarios. *See* Defs. Br. at 15-16 (citing *EEOC v. Thomas Dodge Corp. of N.Y.*, 524 F. Supp. 2d 227, 239 (E.D.N.Y. 2007); *Murray,* 74 F.3d at 404-05. Unlike this Court, the Second Circuit still uses the four-part integrated enterprise test in some Title VII cases. *See, e.g., Brown v. Daikin Am.*, No. 12-2955, 2014 WL 2895974, at *4 (2d Cir. June 27, 2014) (court used four-factor test to hold that single employer doctrine rendered parent corporation liable for a Title VII violation committed by a subsidiary; held that to

satisfy the single employer test, a plaintiff must allege an amount of participation by the parent company that is sufficient and necessary to the total employment process). The Commission's argument and evidence for Holdings' and Properties' liability is through piercing the corporate veil (and successor liability in Holdings' case). The timing of the discrimination is not germane to that analysis.

## II.  The District Court Acted Within its Discretion in Awarding an Additional 15% of the Back Pay Award to Offset the Tax Consequences.

The district court awarded Miller $43,300.50 in back pay and interest and $6,495 to offset the tax burden Miller will acquire as a result of the award.  The district court acted within its discretion in awarding this relief. Title VII is a remedial statute, and its central purpose is "'to make persons whole for injuries suffered on account of unlawful employment discrimination.'" *Franks v. Bowman Trans. Co.*, 424 U.S. 747, 764 (1976) (quoting *Albemarle Paper*, 422 U.S. at 418). In fashioning make-whole relief, district courts have wide discretion to exercise "their equitable powers to fashion the most complete relief possible. . . . [Title VII] is intended to make the victims of unlawful employment discrimination whole, and . . . the attainment of this objective . . . requires that persons aggrieved by the consequences and effects of the unlawful employment practice be, so far as possible, restored to a position where they would have been were it not for the unlawful discrimination." *Franks*, 424 U.S. at 764 (quoting legislative history).  *See also Eshelman v. Agere Sys.*, 554 F.3d 426, 441 (3d Cir. 2009) (in case brought under the Americans with Disabilities Act, "make whole" remedial purpose of antidiscrimination statute compelled court of appeals' conclusion that a district

court may award an additional sum to compensate for the increased tax burden on back pay pursuant to the court's broad equitable powers); *Sears v. Atchison, Topeka & Santa Fe Ry. Co.*, 749 F.2d 1451, 1456 (10th Cir. 1984) (trial court has wide discretion in fashioning remedies to make victims of discrimination whole).

The district court's additional award of $6,495 will help make Miller whole and was appropriate. *See, e.g., Eshelman,* 554 F.3d at 441 (court held that prejudgment interest and tax offset may be necessary to achieve complete restoration of the prevailing employee's economic status quo and affirmed district court's award of $6,893); *O'Neill v. Sears, Roebuck & Co.*, 108 F. Supp. 2d 443, 446 (E.D. Pa. 2000) (court held that plaintiff is entitled to an award for negative tax consequences and awarded $38,780 to cover the negative tax consequences of back pay and front pay awards); *EEOC v. Joe's Stone Crab, Inc.*, 15 F. Supp. 2d 1364, 1380 (S.D. Fla. 1998) ("A district court, in the exercise of its discretion, may include a tax component in a lump sum back pay award to compensate prevailing Title VII plaintiffs.").

The defendants fault the Commission for its failure to offer evidence on Miller's need for this additional compensation and on the tax rate percentage applied to offset the back pay award. The district court considered evidence of Miller's earnings, including W-2 tax records and his testimony about his earnings, and could extrapolate that his income would increase substantially by receiving a lump sum award. Miller testified he was making $14 per hour, 32 hours a week, as a cook at Sparx, and his W-2s were introduced. S.App.275; EEOC App.284, 285. Miller earned $18,272 in 2010 (EEOC App.284); $11,826 in 2012 (EEOC App.285); and as

30

of August 31, 2013, had earned only $14,851 for that year. (EEOC App.286). Miller was thus awarded significantly more in back pay than he earns in a year. A lump sum of $43,300 is certain to put Miller into a higher tax bracket. For a low-wage worker like Miller, such a result would be common, even without many years of back pay awarded.

The 15% the district court applied to the back pay award was the minimum percentage at which the back pay award would be taxed, regardless of Miller's filing status. *See* Forbes, http://www.forbes.com/sites/moneybuilder/2012/11/01/2013-federal-income-tax-brackets-and-marginal-rates (last visited July 24, 2014), and About Money, http://taxes.about.com/od/Federal-Income-Taxes/fl/Federal-Income-Tax-Rates-for-the-Year-2014.htm (last visited July 24, 2014). The defendants offer no authority requiring expert evidence on this point, and the Commission is not aware of any. Instead, the district court had "wide discretion to locate a just result." *Albemarle Paper*, 422 U.S. at 424 (internal citations omitted).

Moreover, the defendants' reliance on *Sears*, 749 F.2d at 1456, does not dictate another result. The *Sears* court did not limit the availability of a tax component to cases with protracted litigation and many years of back pay awarded. Instead, this Court made clear that "the trial court's inclusion of the tax component was an appropriate exercise of its discretion in the instant case." *Id.* at 1456-57.

## CONCLUSION

For the foregoing reasons, the Commission respectfully urges this Court to affirm the district court's rulings.

Respectfully submitted,

P. DAVID LOPEZ
General Counsel       /s/ Julie L. Gantz
             JULIE L. GANTZ
CAROLYN L. WHEELER    Attorney
Acting Associate General Counsel

            EQUAL EMPLOYMENT
LORRAINE C. DAVIS     OPPORTUNITY COMMISSION
Assistant General Counsel    Office of General Counsel
            131 M Street, NE
            Washington, DC 20507
            (202) 663-4718
            julie.gantz@eeoc.gov

**CERTIFICATE OF COMPLIANCE WITH
TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS,
AND TYPE STYLE REQUIREMENTS**

1. This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)

because this brief contains 8,365 words excluding the parts of the brief exempted by

Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), the

type style requirements of Fed. R. App. P. 32(a)(6), and the typeface and style

requirements of Circuit Rule 32(b) because this brief has been prepared in a

proportionally spaced typeface—12-point Century Schoolbook font in the body of the

brief and 11-point Century Schoolbook font in the footnotes—using Microsoft Word

2003.


  /s/ Julie L. Gantz
Attorney for the Equal Employment Opportunity Commission


Dated:   July 28, 2014

## CERTIFICATE OF SERVICE

I, Julie L. Gantz, hereby certify that I filed this brief with the Court by sending 15 copies, this 28th day of July, 2014, via United Parcel Service, and by uploading an electronic version of the brief and appendix via this Court's Case Management/Electronic Case Filing System (CM/ECF).

I also certify that I have served two copies of the brief, this 28th day of July, 2014, by first-class mail, postage pre-paid, and one electronic version of the brief by electronic mail, to the following counsel of record:

> Michael D. Schwartz
> Brandon M. Schwartz
> SCHWARTZ LAW FIRM
> 600 Inwood Avenue N., Suite 130
> Oakdale, MN  55128

>   /s/ Julie L. Gantz       
> JULIE L. GANTZ
> Attorney
>
> EQUAL EMPLOYMENT
>   OPPORTUNITY COMMISSION
> Office of General Counsel
> 131 M Street, NE
> Washington, DC 20507
> (202) 663-4718
> julie.gantz@eeoc.gov